FRANK ALLEN *v.* THOMAS LANE.

January Term, 1911.

Present: ROWELL, C. J., MUNSON, WATSON, HASELTON, AND POWERS, JJ.

Opinion filed March 22, 1911.

*Trespass—Injuring Animals—Evidence—Admissibility.*

In trespass for mutilating the tails of plaintiff's horses in February, where defendant claimed that the damage was done by calves kept in the barn with the horses, it was error to receive evidence that the calves were in the barn in April or May, it not appearing when nor whence they came, but it appearing that they were so tied that they could not have reached the horses.

TRESPASS for mutilating the tails of plaintiff's horses. Plea, the general issue. Trial by jury at the March Term, 1910, Orleans County, *Waterman,* J., presiding. Verdict and judgment

for the defendant. The plaintiff excepted. The opinion sufficiently states the case.

*Williams & Dane* and *E. A. Cook* for the defendant.

*Young & Young* and *J. W. Erwin* for the plaintiff.

POWERS, J. This is an action of trespass for mutilating the tails of the plaintiff's horses. The plaintiff testified that on the 14th day of February, 1908, he caught the defendant, who was his hired man, cutting off the tails of these horses. The defendant was not present at the trial, but the theory of his counsel was that the damage was caused by two calves which the plaintiff kept tied in the horse barn and not by act of the defendant. Numerous exceptions were taken to the admission of evidence, but the only ones we regard of sufficient importance to merit special consideration are those to the admission of the evidence regarding the calves just referred to. Subject to these exceptions, the defendant was allowed to show that about the first of April and about the first of May of that year the plaintiff kept two calves, from two to six months old, tied in the same stable where the horses were.

The admission of this evidence cannot be sustained. In the first place, as urged by the plaintiff, it cannot be said, in the circumstances shown by the record, that the mere fact that these calves were in the horse barn in April or May has any tendency to show that they were there in the February before. The defendant's argument is that the ages of the calves tends to show this fact. But it does not appear that they were born on the place, nor is there anything to show when they came, or whence. But this objection is not necessarily determinative of the admissibility of the evidence. The date referred to, February 14, 1908, was the one given by the plaintiff as the one on which the injury was inflicted. But the jury was not bound to accept this as the true date. It was no more bound to accept the plaintiff's testimony as to the date than it was to believe his statement that he saw the defendant doing the act. There was quite enough before the jury to arouse sus-

picion of the plaintiff's story. The character of the act charged to the defendant was such that it would be expected to stir the indignation if not arouse the anger of the most mild tempered man. Yet, in the face of this outrage, though the defendant (if the plaintiff is to be believed) had spoiled the beauty of this splendid team and caused him one hundred dollars damage, the plaintiff did not turn him off or make him trouble, but kept him there apparently on friendly terms until about the first of March, when the record shows "the defendant left the plaintiff's place". The latter did not then seek redress. It was not until after the defendant sued him,—which was about May 1st according to the officer who served the writ— and about June 1st that suit was begun to recover the damages so maliciously inflicted.

The defendant was not confined to evidence of conditions which existed on the plaintiff's date; he was at liberty to show, if he could, that the damage was done by the calves and not by him, and that it was done at some other time and not on February 14th. But the more serious trouble with this evidence is that it does not appear that the calves were ever near enough to these horses to do the damage complained of. The horse stable was twenty-five feet long. Four single stalls and one box stall stood along one side. These horses stood in the two single stalls nearest the door. The calves were tied at the other end of the stable. The only witness who speaks on that subject says one was tied with a rope six feet long. In this situation, of course, they could not by any possibility or at any time reach these horses. There was no evidence that they were ever loose, and the jury had no right to assume that they were. Without more, the mere fact that the calves were tied in the far end of that stable, was immaterial and inadmissible. It must have been harmful, for it was all there was, save the circumstances referred to, on which to predicate a defendant's verdict.

*Reversed and remanded.*